**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
**SEMPRA ENERGY,**                                           :
                                                              :
                        **Plaintiff,**         :
                                                              :   **06 Civ. 6107 (HB)**
      - against -                              :
                                                              :   <u>**OPINION & ORDER**</u>
**NATIONAL UNION FIRE INSURANCE ,**              :
**COMPANY OF PITTSBURGH, PENNSYLVANIA,**    :
                                                              :
                        **Defendants.**         :
-----------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Petitioner Sempra Energy ("Sempra") brings this petition to vacate an arbitration award (the "Award") rendered in favor of Respondent National Union Fire Insurance Company ("National Union") that held that National Union was not liable for coverage to Sempra under Sempra's "political risk" insurance policy. Sempra argues the award should be vacated because it was in "manifest disregard" of law. National Union has cross-filed to confirm the award.

Because the Arbitration Panel's (the "Panel") interpretation of the insurance policy is not in "manifest disregard" of the law, Sempra's petition to vacate the Award is DENIED.

## I.    BACKGROUND

A. <u>The "Political Risk" Insurance Policy</u>

In 1996, Pacific Enterprises International ("PEI"), an energy corporation that merged into Sempra Energy, invested $48.5 million in two Argentinian natural gas distribution companies. The Argentinian companies possessed licenses from the Argentinian government allowing them to calculate gas tariffs in U.S. dollars and index them to the U.S. Producer Price Index. <u>See</u> Sempra Energy's Petition to Vacate Arbitration Award ("Petitioner's Brief"), at 4; Declaration of John M. Wilson ("Wilson Decl."), Ex. A (the "Award"), at 2-3.

Shortly after it made this investment, PEI purchased a "political risk" insurance

policy (technically, a "Confiscation, Expropriation, Nationalization and Selective Discrimination Insurance Policy") from National Union through its insurance broker Marsh & McLennan. See Petitioner's Brief at 4; Wilson Decl., Ex. B ("the Policy").  The insurance policy protected against "expropriatory act[s]" by the Government, including those that "expressly and permanently deprive[d] the Foreign Enterprise of all or part of its fixed and/or current assets."  See Policy at Article II.A.  The policy essentially limited recovery to the amount of Sempra's investment, less the amount of all "intangible assets."  Id. at Art. III.K, III.L.[1]  The policy also contained an exclusion for losses caused by "currency fluctuation or devaluation" by the Government.  Id. at Art. IV.D.[2]

In January 2002, the Argentinian Government passed the "Public Emergency and Reform of the Exchange System Act," which abolished foreign investors' rights to calculate gas tariffs in U.S. dollars and index them to the U.S. Producer Price Index, and ended the pegging of the Argentinian peso to the U.S. dollar.[3]  Sempra's gas tariffs were

---

[1] The policy indemnified PEI for "the Insured Percentage of the Insured's Loss caused solely and directly by any act or occurrence set forth in the Causes of Loss occurring during the Policy Period." Wilson Decl., Ex. B, Article I ("Insuring Agreement"). The policy further defined "Loss," in relevant part, as "The value of the Net Investment in the Host Country covered hereunder which has been subject to a Cause of Loss…" Id. at Art. III.K.  The policy further defined "Net Investment" as, "as of the Date of Loss, the sum of:

(i) the Insured's original equity contribution to the Foreign Enterprise plus the Insured's share of retained earnings adjusted for the U.S. dollar equivalent of the Insured's ratable share of profits and losses of the Foreign Enterprise from the date of investment; and

(ii) principal and interest (accruing up to the Date of Loss), on loans made to the Foreign Enterprise by the Insured; and

(iii) principal and interest (accruing up to the Date of Loss) on debts of the Foreign Enterprise Guaranteed by the Insured; and

(iv) the amount of the Foreign Enterprise's accounts payable to the Insured less the amount of the Foreign Enterprise's accounts receivable from the Insured; and

(v) for any equipment or inventory carried on the books of any Insured legally domiciled outside the Host Country, the replacement cost in the Insured's Country on the day prior to the Date of Loss, only if such equipment or inventory is replaced prior to the filing of a proof of Loss, otherwise, such inventory or equipment shall be covered at net book value;

Less:

the amount of all intangible assets, including but not limited to goodwill, operating rights, franchise agreements, trademarks, capitalized expenses, and research and development." Id. at Art. III.L.

[2] The "currency exclusion" reads in relevant part:

"The Company shall not be liable for Loss caused by or resulting from… D. insolvency, bankruptcy or financial default of any party or person whatsoever; or exchange control regulations by the Government of the Host Country; or currency fluctuation or devaluation[.]" Id. at Art. IV.D.

[3] See "Public Emergency and Reform of the Exchange System," No. 25,561, January 6, 2002, at Wilson Decl., Ex. D.  Section 8 provided that "the clauses providing for adjustments in dollars or in other foreign currencies contained in agreements executed by the Public Administration under the rules of public law,

2

reduced to one-third of their expected revenue. See Award at 6. Sempra filed a claim under their "political risk" policy, National Union refused to pay, and the claim went to arbitration. Id.

### B. The Arbitration Award

The parties proceeded to engage in eight months of discovery, including 20 depositions. See National Union's Opposition to Sempra Energy's Petition to Vacate Arbitration Award ("Respondent's Opposition"), at 4. The arbitration panel, chaired by former Second Circuit Judge George Pratt, reviewed summary judgment motions filed by both parties, and after oral argument, denied both motions for summary judgment. Id. at 5. The Panel then conducted an eight-day hearing on the merits, with a record totaling over 2,200 pages. Id. at 6.

The Panel, in a sixteen-page opinion, found for National Union. The Panel found that the Argentinian Government's action constituted an "expropriatory act." See Award at 11. Under U.S. GAAP accounting principles, the licenses, even though intangible assets, could be included on the Argentinian companies' balance sheets as "fixed assets," along with their pipelines and other equipment, and thus fell within the policy's definition of an "expropriatory act" that deprived Sempra of its "fixed and/or current assets." Id.[4]

---

including, among others, the public works and services agreements, as well as the adjustment clauses based on price indexes of other countries and any other indexation mechanism, are hereby rendered ineffective." Id. Section 9 provided that "The Argentine Executive Branch is hereby authorized to renegotiate the agreements falling under Section 8 of this Law." Id. Section 19 provided that "No person may allege against [this law] the existence of any irrevocably vested rights. Any other provision inconsistent with the terms hereof is hereby repealed." Id.

[4] "[A]ccording to Sempra, the intangible assets included in the licenses – vested rights to dollar-based tariffs and PPI adjustments – are included in the reporting on the balance sheet of the fixed assets of pipe lines and other plant and equipment." Award at 11. "[U]nder the policy, GAAP principles of accounting control 'all financial statements and accounts as well as the calculation of loss.'" Id. The Panel noted that under U.S. GAAP, FAS 141, para. 39, "an intangible asset shall be recognized as an asset apart from goodwill if it arises from contractual or other legal rights…" Id. at 10. "Application A10 provides that paragraph 39 does not preclude an acquiring entity from recognizing the fair value of the operating license and the fair value of the [physical plant] as a single asset for financial reporting purposes if the useful lives of those assets are similar." Id. (internal citation omitted). The Panel noted that the Argentinian companies' physical assets and the licenses had similar useful lives. Id. at 10-11.

The Panel accordingly held that "Although we have not been provided with any financial statements… that expressly indicate the licenses were included in the fixed assets of the operating companies, it is nevertheless clear that one of the major assets of each of those companies was its license to distribute natural gas in Argentina, and the license was not reported elsewhere on the financial statements… [W]e conclude that the licenses can also be viewed as "fixed assets" within the terms of the policy." Id. at 11.

However, the Panel also found that "National Union agreed to insure only certain types of expropriations." Id. at 9. The Panel found that the licenses were an "intangible asset," subtracted by definition from the "loss" that Sempra could recover. Id. at 12. Thus, Sempra was owed no recovery.[5] Additionally, the Panel alternatively found that Sempra's losses were caused by the Government's "currency fluctuation or devaluation," and fell within that exclusion as well. Id. at 14-15.[6] Based on this reasoning, the Panel wholly denied Sempra's claim.

## II. STANDARD OF REVIEW

In addition to the grounds for vacatur explicitly provided for by the Federal Arbitration Act, 9 U.S.C. § 10(a), an arbitral decision may be vacated when an arbitrator has exhibited a "manifest disregard of law." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 208 (2d Cir. 2002). Claims for "manifest disregard" are limited "…to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent…" Robert Lewis Rosen Assocs., Ltd. v. Webb, 2003 U.S. Dist. LEXIS 21317, at *21-22 (S.D.N.Y. 2003) (Baer, J.). The standard of review is "severely limited." Westerbeke, 304 F.3d at 208.

To succeed, a movant must meet a three-pronged test. First, the movant must prove that the governing legal principle at issue is "well defined, explicit, and clearly applicable to the case." Second, the court must find the law was in fact improperly applied, leading to an erroneous outcome. Third, the movant must prove that the arbitrator knew of the law, understood its applicability to the situation, and intentionally disregarded it. Robert Lewis Rosen, 2003 U.S. Dist. LEXIS 21317, at *22-23, citing Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389-90 (2d Cir.

---

[5] Sempra, on its part, had argued that the clause excluding "intangible assets" from recovery was intended to exclude the value of remaining intangible assets, after the expropriatory act occurred. See Petitioner's Brief, at 10-11. They argue that National Union's expert had adopted this definition as well before the Panel. See Wilson Decl., Ex. K.

[6] "[E]xclusion D, covering a loss caused by or resulting from currency devaluation, does seem to cover the circumstances here." Award at 14. "[T]he direct cause of the reduction in Sempra's dollar revenues was currency devaluation." Id. Additionally, the "cancellation of the periodic PPI adjustments… seems to fall under the exclusion for 'currency fluctuation.'" Id. at 15. "Canceling the adjusting mechanism, as did the [Argentinian Government], then permitted 'currency fluctuation' to occur. Whatever loss this may have caused to Sempra would not be recoverable under the policy because of Exclusion IV-D." Id.

2003).[7]

### III.  DISCUSSION

Petitioners Sempra allege that the Panel "manifestly disregarded" New York law in three ways. First, the Panel "refused to give effect to the policy's essential purpose of insuring against expropriation," rendering the policy as interpreted "illusory." Second, the Panel "refused to resolve any ambiguities in the policy in favor of coverage." Third, the Panel did not construe exclusions narrowly against the insurer.

Sempra's three arguments boil down to one – that the arbitrator failed to follow general principles of contract interpretation and interpreted the insurance contract wrongly. However, "misapplication… of… rules of contract interpretation does not rise to the stature of a 'manifest disregard' of law." I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 431 (2d Cir. 1974), citing Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960).[8] In short, a "court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." Wallace v. Buttar, 378 F.3d 182, 190. Rather, a court will confirm an arbitration award "so long as, under one [possible] reading, the judgment rests upon a colorable interpretation of law." Westerbeke, 304 F.3d at 212 n.8.[9] The Panel has provided a colorable interpretation here sufficient to uphold the Award.

####   A.  Sempra's Arguments Regarding Loss Calculation

Sempra fails to meet the first prong of the test for "manifest disregard" – that the governing legal principle at issue is "well defined, explicit, and clearly applicable to the case." Robert Lewis Rosen at *22-23. Regarding all three of its arguments, Sempra fails

---

[7] The Second Circuit, as of 2004, had vacated an arbitral award for "manifest disregard" of law in only four of 49 instances where it considered the issue. "[T]hese are sobering odds." Wallace v. Buttar, 378 F.3d 182, 191 (2d Cir. 2004).

[8] "All of appellant's claims here reduce to the proposition that the arbitrators misconstrued the contract…. Whatever arbitrators' mistakes of law may be corrected, simple misinterpretations of contracts do not appear one of them." I/S Stavborg, 500 F.2d at 431-32.

[9] See also Wallace v. Buttar, 378 F.3d at 190 ("[T]he award 'should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'"), citing Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003).

to show that the general principle it cites is "clearly applicable" to the present action.[10]

Sempra first argues that the Panel's interpretation "refused to give effect to the policy's essential purpose of insuring against expropriation." However, the Award can be plausibly read to give effect to the policy's purpose of insuring against expropriation – but concluding "…that National Union agreed to insure only certain types of expropriations." See Award at 9.  Indeed, the Panel found the existence of an expropriatory act, but determined that the particular type of loss that Sempra suffered was not covered under this policy.[11] Although the general principle that a decisionmaker should give effect to the policy's purpose may be clear, it is not clearly applicable to the present action. See Robert Lewis Rosen, 2003 U.S. Dist. LEXIS 21317, at *23-24.

Sempra strenuously argued that the Panel's interpretation of "loss" rendered the contract "illusory," and further that it violated general rules of contract interpretation. However, under the Panel's interpretation, it does not necessarily follow that the contract is "illusory."  For example, as National Union's counsel pointed out at oral argument, one interpretation of the Award is that the policy covered expropriation of "tangible" assets – such as pipelines, trucks, or bank accounts – but deducted from any recovery the value of "intangible assets," such as licenses.[12]  See Award at 15 ("The policy covered a number

---

[10] At the outset, it is worth noting that it is doubtful the three general principles of contract interpretation Sempra argues the Panel "manifestly disregarded" could be, as a matter of law, "well defined" and "explicit" enough to support a finding of "manifest disregard" of the law. All three are general principles of contract interpretation.  As such, their generality leads one to believe that they are susceptible to different interpretations by different decisionmakers, and thus not appropriate grounds for a claim of "manifest disregard." Cf. Westerbeke, 304 F.3d at 216 ("As a general matter, if the cases that establish a particular legal principle are factually distinguishable in a material respect from the case at bar, then that principle is not 'well defined, explicit, and clearly applicable.'"). For what it is worth, Sempra offers no case factually similar to the case at bar, involving political risk insurance, in which the general principles it cites unequivocally establish that the Panel's interpretation was wrong.

[11] The Panel also gave significance to the fact that Sempra, through its broker, purchased a "Confiscation, Expropriation, Nationalization and Selective Discrimination Insurance Policy," rather than a policy that provided coverage equal to what an Overseas Private Investment Corporation policy would cover. See Award at 3-4.  Although Sempra requested an "OPIC or better" policy, that was not what they eventually purchased. "[Sempra] believed that such broad coverage was what they received, but they were mistaken." Id. at 8.

[12] "[W]hat's covered are the pipelines, the equipment, the bank account, the trucks, things that are necessary to operate the business…. If [the bank account] was taken, if it was seized, if it was expropriated, we would have insured that loss." Transcript of Oral Argument, October 23, 2006, at 31.

Sempra argued that they put evidence before the Panel that the Argentinian companies acquired only "nominal" title to the physical assets.  However, "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." Wallace v. Buttar, 378 F.3d 182, 193 ("A federal court may not conduct a reassessment of the evidentiary record…"); see also Westerbeke, 304

6

of potential political risks, but those covered risks did not materialize here."). And, under this interpretation, the value of Sempra's "intangible assets" was to be considered as of before the expropriatory act, not after.[13]  Under this reading, had the value of Sempra's Argentinian fixed assets been much larger than their intangible assets at the time of the expropriatory act, Sempra would have recovered; but that was not Sempra's situation.[14] This interpretation is at least a "barely colorable" justification sufficient to support the Panel's decision. See Wallace v. Buttar, 378 F.3d 182, 190.

Secondly, Sempra argues the Panel manifestly disregarded the general principle that a decisionmaker should resolve any ambiguities in the policy in favor of coverage. However, the Panel found the policy to be unambiguous. See Award at 12 ("The policy expressly deducts 'intangible assets' in its calculation of Sempra's 'Loss.' There can be no dispute that the cancelled provisions in the license agreements were 'intangible assets.'"). The Panel's apparent finding that there was no ambiguity also negates Sempra's third argument, that the Panel did not construe ambiguous exclusions narrowly against the insurer. As noted, although the general principle may be clear, it is not clearly applicable to the present action. See Robert Lewis Rosen, at *23-24; see also I/S Stavborg v. National Metal Converters, Inc., 500 F.2d at 431. Sempra thus fails on all three grounds to meet the first prong necessary to vacate an award for "manifest disregard" of the law.

B.  Sempra's Arguments Regarding the Currency Exclusion

Even were the Panel's decision regarding loss calculation in "manifest disregard" of the law, the Panel's alternative holding that the "currency fluctuation or devaluation" exclusion precluded recovery provides sufficient justification to uphold the Award. "[W]here the arbitral tribunal has handed down an opinion open to more than one

---

F.3d at 218 "Under the manifest disregard standard… the governing law must clearly apply to the facts of the case, *as those facts have been determined by the arbitrator*.") (emphasis intact).

[13] Sempra argues that the Panel ignored evidence, put on by both parties, that "intangible assets" were to be valued after the expropriatory act. Again, however, "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." Wallace v. Buttar, 378 F.3d at 193.

[14] Although one might note an incongruity in considering the licenses as "fixed assets" in defining an expropriatory act, but "intangible assets" in defining loss, "internal inconsistencies within an arbitral judgment are not grounds for vacatur." Westerbeke, 304 F.3d 200, 211.

7

possible reading, [the court] will confirm the award so long as, under one of these readings, the judgment rests upon a colorable interpretation of law." Westerbeke, 304 F.3d 200, 212 n.8.

Sempra's objections to the interpretation of this exclusion are that the Panel refused to resolve ambiguities in favor of coverage, and did not construe exclusions narrowly against the insurer. However, it is equally plausible, as noted, that the Panel did not find any ambiguity in the clause, and found the exclusion valid. See Award at 14, 15, discussed at note 6, infra. The Panel's decision that the "currency devaluation" exclusion applies is an alternate, at least "barely colorable" justification for its award.[15]

## IV. CONCLUSION

Because the Panel's interpretation of the insurance policy is not in "manifest disregard" of the law, Petitioner Sempra's petition to vacate the arbitration award is DENIED, and Respondent National Union's cross-motion to confirm the arbitration award is GRANTED. Each party shall bear its own costs and attorney's fees regarding this petition. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**October 31, 2006**

_____
U.S.D.J.

---

[15] Sempra argued that the Award's language alternatively applying the currency exclusion was too "equivocal" to bar Sempra's claim. See Petitioner's Brief at 24; see Award ("exclusion D... does seem to cover the circumstances here."). However, "arbitrators are not required to provide an explanation for their decision," let alone one that is unequivocal. See Wallace v. Buttar, 378 F.3d at 190, citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997). Indeed, "[e]ven where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390. Sempra's argument is unavailing.

8